IN THE UNITED STATES DISTRICT COURT
FILED'09 AUG 18 15:14USDC-ORP

FOR THE DISTRICT OF OREGON

GORDON F. CLOW,                          )
                                         )
                                         )
                  Plaintiff              )        Civil No.08-281-AA
                                         )
        v.                               )        OPINION AND
                                         )        ORDER
MICHAEL J. ASTRUE,                       )
Commissioner of Social Security,         )
                                         )
                  Defendant.             )

KIMBERLY K. TUCKER
Swanson, Thomas & Coon
820 S.W. Second Avenue, Suite 200
Portland, OR 97204
        Attorney for Plaintiff

KENT ROBINSON
Acting United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

THOMAS M. ELSBERRY
Special Assistant U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

        Attorneys for Defendant

AIKEN, District Judge:

Plaintiff Gordon Clow ("Clow") seeks judicial review of the Social Security Commissioner's final decision denying his application for benefits under Title II of the Social Security Act (the "Act"). This court has jurisdiction under 42 U.S.C. § 405(g). The Commissioner's decision should be REVERSED and REMANDED for the reasons below.

## BACKGROUND

Born in 1948 (Tr. 69),[1] Clow completed one year of post-secondary education. Tr. 87. Between 1969 and 1998 Clow worked as a network and systems technician. Tr. 82. Clow applied for DIB on July 29, 2003, alleging disability since December 7, 2001 (Tr. 69-71), due to post-traumatic stress disorder ("PTSD"), diabetes, shoulder problems, and coronary artery disease. Tr. 81.

The Commissioner denied Clow's applications initially and upon reconsideration. Tr. 35-41. An Administrative Law Judge ("ALJ") held a hearing on August 31, 2005 (Tr. 112-157), and subsequently found Clow not disabled on November 21, 2005. Tr. 744-56. The Appeals Council remanded the matter back to the ALJ on December 1, 2006, for further proceedings. Tr. 758-61. An ALJ held a second hearing on June 19, 2007 (Tr. 1158-74), and the ALJ again found Clow not disabled on July 24, 2007. Tr. 20-34.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on October 22, 2008 (Docket #6).

in determining disability under the meaning of the Act.  20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i).  At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month duration requirement. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). If the claimant does not have such a severe impairment, he is not disabled.  *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC").  The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. § 404.1520(e); Social Security Ruling ("SSR") 96-8p (*available at* 1996 WL 374184).

The ALJ uses this information to determine if the claimant can perform his past relevant work at step four.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant can perform his past relevant work, he is not disabled.  If the ALJ finds that the claimant's RFC precludes performance of his past relevant work the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v); 404.1520(f); *Yuckert*, 482 U.S.

at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If the claimant cannot perform such work, he is disabled. *Id.*

The initial burden of establishing disability rests upon the claimant. 20 C.F.R. § 404.1512(a); *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1566.

## THE ALJ'S FINDINGS

The ALJ's July 2007 decision found Clow's history of coronary artery disease (post coronary artery bypass graft surgery and stent placement) "severe" at step two of the sequential proceedings. Tr. 22. The ALJ found that Clow's impairment did not meet or equal an impairment "listed" in the Commissioner's regulations (Tr. 25), and assessed Clow's RFC:

> The claimant has the residual functional capacity to perform medium work. He is able to sit eight hours out of eight-hours [sic] in a normal workday. He is able to stand and walk six out of eight hours in a normal workday. He is limited to occasionally bend, stoop, crouch, and crawl. He is restricted to frequent overhead reaching. He has no other limitations.

Tr. 26. The ALJ found that this RFC precluded performance of Clow's past relevant work at step four, but allowed Clow to perform work in the national economy at step five. Tr. 32-33. The ALJ therefore found Clow not disabled.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied

4 - OPINION AND ORDER

proper legal standards and the findings are supported by substantial evidence in the record. 42

U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193

(9th Cir. 2004). This court must weigh the evidence that supports and detracts from the ALJ's

conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Reddick v. Chater*,

157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of

the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir.

2006)). Variable interpretations of the evidence are insignificant if the Commissioner's

interpretation is a rational reading. *Id.*, *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Clow contends that the ALJ erroneously assessed his credibility, the opinions of medical

sources, and the lay witness testimony. Clow also asserts that the ALJ improperly disregarded a

Veteran's Administration ("VA") disability decision, made improper step two findings, and,

consequently, should have found him disabled at step five.

## I.     The ALJ's Credibility Finding

Clow asserts that the ALJ's credibility analysis failed to make sufficiently specific findings

and erroneously relied upon Clow's activities of daily living. Pl.'s Opening Br. 26-27. The

Commissioner cites the relevant legal standards but fails to discuss the ALJ's findings. Def.'s Br.

17.

### A.     Credibility Standard

Once a claimant shows an underlying impairment which may "reasonably be expected to

produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide

"clear and convincing" reasons for finding a claimant not credible. *Lingenfelter,* 504 F.3d at 1036

(citing *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ's credibility findings must

be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony." *Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir. 1995) (citing

*Bunnell v. Sullivan,* 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). The ALJ may consider

objective medical evidence and the claimant's treatment history, as well as the claimant's daily

activities, work record, and observations of physicians and third parties with personal knowledge of

the claimant's functional limitations. *Smolen,* 80 F.3d at 1284. The ALJ may additionally employ

ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding

symptoms by the claimant. *Id.* The ALJ may not, however, make a negative credibility finding

"solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective

medical evidence." *Robbins,* 466 F.3d at 883.

### B.    Analysis

The ALJ found Clow's testimony regarding his symptoms not entirely credible. Tr. 27. The

ALJ supported this finding by stating that "objective medical evidence, medical opinions and other

factors do not fully support the claimant's allegations." *Id.* Here the ALJ discussed the opinions of

Drs. Ahmed, McDonough, Bonafede, Shalz, and Ogisu. Tr. 27-32. The ALJ failed to make a

discrete credibility analysis or conclusion; this court therefore infers the ALJ's credibility findings

from his general discussion regarding Clow's RFC.

### a.    Activities of Daily Living

The ALJ's June 2007 decision incorporated text from his November 2005 decision, which

cites Clow's activities in conjunction with Clow's VA record. Tr. 29. The ALJ stated that Clow "walks two miles, was remodeling his home, took a trip to England, had increased activity and was able to climb stairs with no chest pain or shortness of breath, goes hunting, lifts "heavy" equipment while hunting, and per his own testimony, rides a "quad" that he loads and hauls." *Id.* (internal citations omitted). The ALJ inferred, but did not state, that these eight references undermined Clow's allegation of disability.

The record does not support six of these eight references. On June 7, 2004, a VA physician noted that Clow walks two miles on his treadmill without difficulty, but concurrently stated that Clow does this "sometimes with some chest pain." Tr. 623. The ALJ's reference to Clow's use of a treadmill following coronary bypass surgery is incomplete and therefore not based upon the record.

On January 15, 2004, Clow reported to treating physician Dr. Shalz that he was remodeling his home following his retirement. Tr. 563-64. The ALJ's reference to Clow's remodeling activity is based upon the record.

In June 2005 a physician noted that Clow planned a trip to England. Tr. 426. The record does not indicate that Clow in fact took this trip, or what exertional level he performed on this trip.

More significantly, the ALJ relied upon Clow's report that he could climb stairs in his home without shortness of breath. The ALJ's citations points to a January 1, 2005, physician report that Clow could do this, and was "fairly active." Tr. 438. This report was made as Clow recovered from coronary bypass surgery. This citation does not establish that Clow's ability to climb stairs is inconsistent with Clow's allegation of disability.

The ALJ's citation to Clow's hunting activity shows that Clow reported a hunting expedition

to his physician on October 17, 2003, during which he became hypoglycemic, with a blood sugar measurement of thirty eight. Tr.709. This citation does not show that Clow could hunt without disruption from his impairments. This citation is furthermore silent regarding Clow's ability to lift lifts "heavy equipment" while hunting, and does not support that finding.

Finally, the ALJ provided no citation for his finding that Clow rides a "quad" vehicle. Tr. 29. The Commissioner does not address this finding in his discussion of the ALJ's findings regarding Clow's activities of daily living.

The ALJ's finding regarding Clow's purported ability to climb stairs and exercise failed to cite the contextual background regarding Clow's recovery from coronary bypass surgery. The ALJ's citation to Clow's activities of daily living are not supported by the record regarding Clow's hunting and "quad" activity. Because these findings are not properly supported, they are not sustained. The ALJ's remaining citation to Clow's planned trip to England and remodeling his home do not sufficiently establish that Clow's activities of daily living contradict his allegations of disability during the period in question or establish that he performed activities of daily living equivalent to the RFC assessed by the ALJ. The ALJ's citation to Clow's activities of daily living in discrediting Clow is not sustained.

### b.    Medical Evidence Regarding Chest Pain

The ALJ also found "little evidence in the records" to support Clow's testimony that he continues to experience chest pain following his double coronary artery bypass surgery. Tr. 29-30. Once a claimant shows an underlying impairment, as Clow has, the ALJ may not require medical evidence to corroborate a claimant's symptom testimony. *Bunnell*, 947 F.3d at 346. The ALJ may

never reject a claimant's symptom testimony "solely because" the degree of alleged pain is unsupported by the medical evidence. *Id.* at 346-347; *Robbins*, 466 F.3d at 883. The ALJ's reasoning does not account for the proper legal standards regarding symptom testimony and is therefore not sustained.

### c.    Clow's Work History

The ALJ also inferred that Clow ceased working due to retirement rather than disability. Tr. 29. The record supports this finding. Clow testified that he retired from his systems technician job December 7, 2001, due to economic workforce reductions. Tr. 1117. This finding is sustained.

### C.    Credibility Conclusion

In summary, the ALJ's sustainable credibility findings are limited to two citations to Clow's activities of daily living, and reference to Clow's retirement. This court may sustain an ALJ's credibility determination where some, but not all of the ALJ's reasoning is based upon the record and correct legal standards. *Batson*, 359 F.3d at 1197. The ALJ presently misconstrued most of Clow's reports of his daily activities, and clearly contradicted the applicable standard by requiring that Clow's pain testimony be corroborated by the medical record. This court cannot find such errors harmless, and the ALJ's credibility finding is therefore not sustained.

## II.    Medical Source Statements

Clow challenges the ALJ's analysis of treating physicians Drs. McDonough and Shalz, and examining physician Dr. Ogisu.

### A.    Standards: Medical Source Statements

Generally, the ALJ must accord greater weight to the opinion of a treating physician than that

of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician in favor of an examining physician. *Id.* The ALJ may also reject a physician's opinion unsupported by clinical notes or findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

**B.    Treating Physician Dr. McDonough**

    **a.    Dr. McDonough's Opinion**

Internist Dr. McDonough treated Clow between March 21, 2001, and June 4, 2007. Tr. 207-17; 706-35; 789-91; 1055-59; 1110-1111. During this period Dr. McDonough followed Clow's coronary artery disease, and additionally assessed neck pain, major depressive disorder, PTSD, anxiety, and insomnia. *Id.*

On July 16, 2003, Dr. McDonough wrote a letter to the record stating that between January and July 2003 Clow had an unstable angina requiring a coronary bypass graft, which was done in May 2003. Tr. 206. Dr. McDonough opined that Clow's Agent Orange exposure in Vietnam caused his diabetes, and that Clow's diabetes was in turn "the major contributing factor to his coronary artery disease." *Id.* Dr. McDonough also stated that Clow has PTSD stemming from his Vietnam combat service, and that he "subsequently has a high level of anxiety, which was also no doubt a major contributing factor to the development of his coronary artery disease." *Id.*

Dr. McDonough wrote a second letter on September 23, 2005, stating that Clow has work-related limitations resulting from his medical conditions. Tr. 789. Dr. McDonough wrote that Clow may engage in "light" exertional-level work "as long as he could sit and stand as needed to." *Id.* Dr. McDonough opined that Clow's carpal tunnel syndrome precludes him from sustaining repetitive

grasping, gripping, pulling, keyboarding, or performing fine motor movements. *Id.* Dr. McDonough specifically noted that Clow could not work at all following his cardiac bypass surgery, and that his work-related limitations cited above have been effective since Clow's recovery from that procedure. *Id.*

**b.    Analysis**

The ALJ briefly noted Dr. McDonough's treatment notes regarding Clow's alleged ankylosing spondylitis. Tr. 24, 27. The ALJ then "incorporated" and quoted the November 2005 ALJ findings regarding Dr. McDonough's September 2005 letter. Tr. 30. Here the ALJ first rejected Dr. McDonough's September 2005 letter because the ALJ found that Dr. McDonough restricted his work limitations to the period during which Clow was recovering from cardiac bypass surgery. *Id.* Dr. McDonough's letter clearly states that Clow was precluded from all work immediately following his surgery, and that Dr. McDonough's articulated limitations permanently applied to the Clow after he completed his recovery. Tr. 789. This reasoning is not based upon the record and is not sustained.

The ALJ also found Dr. McDonough's opinion unsupported by his clinical notes, citing "Exhibit 28F." Tr. 30. The ALJ may reject physician opinions unsupported by appropriate clinical notes or findings. *Bayliss*, 427 F.3d at 1216. However, the ALJ presently failed to identify the manner in which Dr. McDonough's notes did not support his September 2005 letter. The ALJ's indicated citation, Exhibit 28F, encompasses twenty-nine pages, documenting Dr. McDonough's treatment of Clow between March 21, 2001, and August 8, 2005. Tr. 706-35. Dr. McDonough additionally produced clinical notes which constitute Exhibits 4F and 30F, which the ALJ did not

cite in rejecting Dr. McDonough's opinion. Tr. 206-13; 789-91. This evidence cumulatively establishes that Dr. McDonough's opinion was supported by clinical notes. The ALJ's finding that Dr. McDonough's opinion is unsupported is not sustained.

For both these reasons, the ALJ's July 2007 analysis, including his incorporation of the November 2005 opinion, did not sufficiently reject Dr. McDonough's opinion.

### C.    Treating Physician Dr. Shalz

Dr. Shalz treated Clow at the VA between March 10, 2003, and May 10, 2005. Tr. 348-49; 354-60; 427-29; 436-40;565-66; 572-75; 580-81; 588-593; 642. During this time Dr. Shalz primarily treated Clow's diabetes, and also assessed coronary artery disease, PTSD, iritis, hyperlipidemia, hypertension, eczema, gastroesophageal reflux disease, osteoarthritis of the shoulders, joint pain, and low back pain. *Id.* On September 29, 2003, Dr. Shalz indicated that Clow was "totally and permanently disabled and cannot perform any substantial gainful activity" on forms relating to Clow's 401(k) investments. Tr. 642-43.

The ALJ's "incorporation" of the November 2005 ALJ decision cited Dr. Shalz's opinion. Tr. 30. Here the ALJ mistakenly cited Dr. Shalz as a medical assistant, found her opinion unsupported, and furthermore noted that disability findings are reserved for the Commissioner. *Id.*

Physicians are acceptable medical sources under the Commissioner's regulations, 20 C.F.R. § 404.1513(a)(1); physician's assistants are not. 20 C.F.R. § 404.1513(d)(1). The record shows (Tr. 348), and the Commissioner concedes (Def.'s Br. 15) that Dr. Shalz is a physician, rather than a medical assistant. The ALJ's reasoning that Dr. Shalz is not an acceptable medical source is therefore not sustained.

The record also shows that Dr. Shalz supported her opinions. Dr. Shalz's diagnoses, cited above, are each accompanied by clinical examination and treatment notes. Tr. 348-49; 354-60; 427-29; 436-40;565-66; 572-75; 580-81; 588-593; 642. The ALJ's finding that Dr. Shalz's opinion is unsupported is also not sustained.

The ALJ was correct in noting that disability decisions are reserved for the Commissioner. 20 C.F.R. § 404.1527(e)(1). However, the ALJ must still consider Dr. Shalz's opinion. 20 C.F.R. § 404.1527(b). In summary, this reason alone is not sufficient to reject Dr. Shalz's opinion. The ALJ's findings regarding Dr. Shalz are not sustained.

### D.    Examining Physician Dr. Ogisu

Dr. Ogisu examined Clow for Disability Determination Services ("DDS")[2] on September 30, 2003. Tr. 335-38. Dr. Ogisu reviewed Clow's records and performed a comprehensive orthopedic examination. Tr. 336. Dr. Ogisu assessed bilateral knee pain due to patellofemoral problems, which Dr. Ogisu believed to be likely degeneration of the articular cartilage under the patella. Tr. 338. Dr. Ogisu also assessed chronic low back pain, cervical degenerative disc disease, a history of left shoulder surgery, and a history of diabetes and coronary artery disease. *Id.* Dr. Ogisu concluded that Clow is "probably able" to sit six hours in an eight-hour day, stand and walk for at least half the time in an eight-hour day, and lift and carry up to fifty pounds on an occasional basis and ten pounds on a frequent basis. *Id.* Dr. Ogisu stated that Clow's ability to manipulate objects with his hands is unrestricted, but that Clow has difficulty with overhead activities due to decreased cervical range of

---

[2]DDS is a federally-funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. §§ 404.1503.

motion. *Id.*

The ALJ discussed Dr. Ogisu's report.  The ALJ first wrote, "Dr. Ogisu said that he suspected the claimant had a lot of degeneration of the articular cartilage under the patella, and he would likely have other degenerative disease on the left. In other words, he was not particularly sure what was going on with the claimant's knees and was merely speculating." Tr. 31. Dr. Ogisu based his opinion upon clinical examination and Clow's reports of pain upon examination. Tr. 337. This is an acceptable basis for a physician's opinion. 20 C.F.R. § 404.1527(d)(3). ALJ's finding that, as an examining physician without diagnostic tests at his disposal, Dr. Ogisu was merely "speculating" is not sustained.

The ALJ also noted Dr. Ogisu's report of Clow's reports of back pain, and subsequently stated that "as previously discussed" Clow's diabetes was controlled and that Clow had a positive left shoulder surgery result. Tr. 31.  The ALJ does not make his inference clear; the ALJ's statements regarding Clow's diabetes and shoulder surgery do not discredit Dr. Ogisu's report regarding Clow's back pain.  This reasoning is not sustained.

Finally, the ALJ found that Clow's reported activities of daily living discredited Dr. Ogisu's ten-pound lifting restriction. Tr. 32.  The ALJ's credibility decision is discussed in detail above. Here the court notes that the ALJ improperly considered Clow's activities of daily living. Therefore, this analysis is an insufficient reason for rejecting Dr. Ogisu's opinion. The ALJ's rejection of Dr. Ogisu's opinion is not sustained.

E.      **Conclusion: Medical Source Statements**

In summary, the ALJ improperly evaluated the opinions of Drs. McDonough, Shalz, and

Ogisu.  The effects of these errors are discussed below.

## III.    Lay Witness Testimony

Clow's stepdaughter, Jolyn Winczewski, submitted a third party report to the record on August 31, 2003.  Tr. 123-31.  Winczewski stated that she sees Clow approximately once per week, and while she "doesn't know much about everyday" activities, he watches TV and naps.  Tr. 123. She indicated that Clow does not care for other people or animals, and is often unable to sleep, though he does not need assistance in personal care.  Tr. 124; 127.  Regarding Clow's activity level, Winczewski reported that he performs very minor household repairs and does no regular chores due to pain and discomfort (Tr. 125-26) but that Clow's hobbies include watching TV, hunting, fishing, and gardening.  Tr. 127.  Notably, Winczewski concurrently stated that Clow cannot perform these activities as he used to do.  Tr. 127.  She also reported that Clow performs minimal shopping and cannot do this very often.  Tr. 126.  Winczewski also wrote that Clow has a short temper and is argumentative.  *Id.*

Winczewski subsequently indicated that Clow is limited in lifting, squatting, standing, reaching, walking, sitting, kneeling, seeing, and stair climbing, as well as limited in memory, completing tasks, concentrating, following instructions, and getting along with others.  Tr. 128.  She explained that Clow's physical difficulties stem from his knee and back pain, and that his vision is impaired by his iritis.  *Id.*  Additionally, she stated that Clow's ability to walk a block has improved since his heart surgery, but that he still has some chest pain.  Winczewski described Clow's attention span as "short" and stated that his attention is limited, depending upon the situation.  Tr. 128.

///

### A.    Standards: Lay Witness Testimony

The ALJ has a duty to consider lay witness testimony.  20 C.F.R. §§ 404.1513(d), 404.1545(a)(3); 416.913(d), 416.945(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  The ALJ may not reject such testimony without comment, and he must give reasons germane to the witness for rejecting her testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  However, inconsistency with the medical evidence may constitute a germane reason. *Lewis*, 236 F.3d at 512.

### B.    Analysis

The ALJ discussed Wineczewski's August 2003 submission.  Tr. 32.  The ALJ first noted Winczewski's statement that Clow could perform household activities, and had hobbies, including watching television, hunting, fishing, and gardening.  *Id.*   The ALJ subsequently noted Wineczewski's indications that Clow has difficulty lifting, squatting, standing, reaching, walking, sitting, kneeling, seeing, and stair climbing, and concluded, "because [Winczewski's] description of activities of daily living is inconsistent with any major limitation in the referred items, the assessment is not given any weight." *Id.*  The ALJ continued, "in any event, [Wineczewski] has no proven expertise in medical or vocational matters, and her opinion about how these items are affected is not reliable." *Id.*  The ALJ concluded by giving Wineczewski's opinion no weight. *Id.*

#### a.    Activities of Daily Living

The ALJ cited Winczewski's description of Clow's hobbies (Tr. 32), but failed to note that

Winczewski concurrently stated that Clow can no longer perform these activities. Tr. 271. This is a significant omission, which changes the implication of Winczewski's testimony. The ALJ's reasoning is therefore not based upon the record and not sustained.

### b.   Lay Witness "Expertise"

The ALJ's reasoning regarding Winczewki's lack of expertise as a lay witness contradicts the purpose of lay testimony, which is to provide lay observations of a claimant's functioning. *Dodrill*, 12 F.3d at 918-19. This reasoning is not sustained.

In summary, the ALJ's rejection of Winczewski's testimony is not based upon the record or the appropriate legal standards and is therefore not sustained.

## IV.   Veteran's Administration Disability Findings

Clow asserts that the ALJ erroneously assessed the Veteran's Administration ("VA") disability finding. Pl.'s Opening Br. 11-15. The Commissioner contends that the ALJ based his finding upon the proper legal standards. Def.'s Br. 5-8. The VA awarded Clow an eighty percent service-connected disability rating on March 21,. 2003. Tr. 599-603.

### A.   Standard: VA Disability Awards

While an ALJ must carefully consider VA disability ratings, he is not bound by another agency's determination of disability. 20 C.F.R. § 404.1504; *McCartey v. Massinari*, 298 F.3d 1072, 1076 (9th Cir. 2002). However, because there is "marked similarity" between the VA and SSA disability programs, the ALJ "must ordinarily give great weight" to the VA disability determination. *Id.* Furthermore, an ALJ must give "persuasive, specific, valid reasons" for rejecting VA findings "that are supported by the record." *Id.* An ALJ may be justified in rejecting a VA disability rating

if he has evidence undermining the VA decision unavailable to the VA. *Valentine v. Comm'r*, __

F.3d __, __ (9th Cir. 2009) (available at 2009 WL 2138981 at *8)(July 20, 2009).

**B.    Analysis**

The ALJ again "incorporated" the November 2005 ALJ decision into his present analysis.

Tr. 28-29. The ALJ stated that the VA "fail[s] to provide objective justification for there [sic]

findings in general, and, [sic] do not provide a rationale that would be consistent with the statutory

and regulatory process applicable in this disability process." Tr. 28.

The court first notes that VA disability determinations, while distinct from the

Commissioner's disability determinations, are nonetheless "markedly similar." *McCartey*, 298 F.3d

at 1076. The ALJ's finding regarding "consistency" between the VA and the Commissioner's

disability determination is therefore inconsistent with the *McCartey* standard.

The record shows that Clow received two VA rating decisions in March 2003 and September

2004. Tr. 599-609; 612-15. These decisions were based upon VA rating examinations, which were

conducted on February 4, 2003 (Tr. 375-77; 867-71), February 12, 2003 (Tr. 373-75), June 11, 2004

(Tr. 626-29; 661-63), September 26, 2005 (Tr. 1010-13), and September 27, 2005 (Tr. 1000-03).

Each rating decision is accompanied by an explanation of the disabling condition with citations to

the rating examination. Tr. 599-609; 612-15. Each rating examination is in turn based upon a

physician's examination, with evaluation of clinical signs and findings. The ALJ's finding that the

VA rating decisions fail to provide "justification" for the VA findings is not based upon the record.

The ALJ also found the VA disability determination unsupported by VA treatment notes.

Tr. 29. Approximately 200 pages of the record before this court are comprised of VA treatment

notes. Tr. 316-330; 346-99; 425-63; 521-97; 802-21; 945-1053. The opinion of VA physician Dr. Shalz, discussed above, also constitutes a significant portion of this record. As noted, Dr. Shalz's opinion is properly supported. For these reasons, the ALJ's finding that VA's disability determination is unsupported by the VA record is not based upon the record.

Finally, the Commissioner asserts that VA records do not establish that Clow's mental impairments are disabling. Def.'s Br. 6. This assertion is misplaced. Clow need not establish that any individual impairment is disabling by itself but, rather, that his impairments *in combination* are disabling. This determination is made "without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523.

In summary, the ALJ's findings regarding the VA disability determination failed to appropriately apply the *McCartey* standard, are not based upon the record, and do not consider Clow's impairments in combination. For all of these reasons the ALJ's findings are not sustained.

## V.    The ALJ's Step Two Findings

Clow challenges the ALJ's finding that his PTSD, diabetes, back and neck impairments, carpal tunnel syndrome, and bilateral osteoarthritis of the knees was non-severe at step two in the sequential proceedings. Pl.'s Opening Br. 15.

An impairment is severe if it "significantly limits" a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. § 404.1520©). However, this court will not remand for further proceedings at step two if subsequent analysis properly discuss the impairments disputed at step two. *See Lewis v. Astrue*, 236 F.3d 909, 911 (9th Cir. 2007) (finding error at step two harmless when the ALJ properly discussed the relevant impairments in his subsequent analysis). Because the

improperly omitted evidence supports a remand for the award for benefits at step five in the sequential proceedings, as discussed below, Clow's step two submission will not be addressed.

## VI.    The ALJ's Step Five Findings

As noted, at step five, the ALJ determines if the claimant may perform work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f); *Yuckert*, 482 U.S. at 142; *Tackett*, 180 F.3d at 1099.  Inability to perform such work results in a finding of disability.  *Id.*  If the disability adjudication process reaches this fifth step, the burden shifts to the Commissioner to show that the claimant may perform work existing in the national economy. *Tackett*, 180 F.3d. at 1100.  The Commissioner may meet this burden by drawing upon the testimony of a vocational expert.  *Id.* at 1101.  If the Commissioner meets this burden the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1566.

The ALJ's questions to the vocational expert must include properly supported limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163 (9th Cir. 2001).  The ALJ need not include limitations unsupported by the record.  *Id.* at 1164-65.

The ALJ's hypothetical questions to the vocational expert presently reflect the ALJ's RFC assessment cited above.  Infra, 4.  This RFC did not include the limitations assessed by Drs. Shalz and Ogisu, as well as those Clow and Winczewsi described in their testimony.  Because the ALJ improperly evaluated that evidence, the ALJ's RFC and his subsequent questions to the vocational expert do not establish that Clow may perform work in the national economy.  The ALJ's step five findings are not sustained.

///

## REMAND

The ALJ erroneously Clow's testimony, the opinions of Drs. Shalz and Ogisu, the lay witness testimony, and Clow's VA disability determinations. The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000.), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989).

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman*, 211 F.3d at 1178 (quoting *Smolen*, 80 F.3d at 1292). The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Dodrill*, 12 F.3d at 919); *Nguyen*, 100 F.3d at 1466-67; *Bunnell*, 947 F.2d at 348.

Here, the ALJ erroneously assessed Clow's reported limitations and those observed by Winczewski. The ALJ also erroneously evaluated Dr. Shalz's opinion and Dr. Ogisu's lifting and postural restrictions. This evidence establishes that Clow can frequently lift ten pounds and

occasionally lift fifty pounds, with additional reaching restrictions. Tr. 338. This evidence also establishes that Clow has an inability to walk or stand more than four hours in an eight-hour shift. *Id.*

The vocational expert testified that the number of positions accommodating these limitations in the national economy would be "substantially" eroded. Tr. 1172-73. Therefore, an individual with these limitations would not be able to perform work existing in the national economy. The vocational expert's testimony thus establishes that Clow is disabled under the Commissioner's regulations.

## **ORDER**

For these reasons, this Court REVERSES the Commissioner's final decision and REMANDS this matter for the immediate calculation and award of benefits consistent with this Opinion and Order.

IT IS SO ORDERED.

Dated this   *13*   day of August  2009.

Ann Aiken
United States District Judge